**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JERRY M. GAST** | **CIVIL ACTION** |
| **VERSUS** | **NO: 26-1374** |
| **RIVERSOURCE LIFE INSURANCE COMPANY, AMERIPRISE FINANCIAL SERVICES, LLC, AND WILLIAM ROBERT DUNCAN JR.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendants Ameriprise Financial Services, LLC and RiverSource Life Insurance Company's Motion to Dismiss (Doc. 8). For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

This matter arises out of the lapse of a long-term-care insurance policy ("the Policy") held by Plaintiff Jerry Gast. The Policy was issued by Defendant RiverSource Life Insurance Company ("RiverSource") and purchased/serviced through Defendant Ameriprise Financial Services, LLC ("Ameriprise"), with

William Duncan, Jr. ("Duncan") acting as the Ameriprise advisor associated with Plaintiff's account.[1]

The Policy was purchased on April 15, 1995, with premiums due annually on April 15. The Policy provides that failure to pay the annual premium within a thirty-one-day grace period after the due date will result in lapse or termination of the Policy. Before Plaintiff's Policy lapsed in June of 2020, RiverSource sent a notification informing her that the annual premium for 2020 was due soon and no payments had been made as of March 23, 2020. Upon expiration of the grace period, RiverSource sent a final payment notification to Plaintiff informing her that if full payment was not received by June 20, 2020, her Policy "will permanently lapse and can not be reinstated."[2] Plaintiff failed to make payment and, as a result, her Policy lapsed.

Plaintiff claims, however, that the purported lapse was without effect "due to Defendants' noncompliance with mandatory policyholder protections and notice requirements."[3] Specifically, Plaintiff alleges that her policy file contained no third-party designation for a third-party to receive lapse notices, nor did she execute a waiver of her right to designate a third party as required by Louisiana Administrative Code Title 37, Part XIII, § 1911. Similarly, she alleges that she executed a "*Durable Power of Attorney for Ameriprise Financial Accounts and Products*" ("POA") in favor of Lisa Gast Mire and Richard A. Mire ("Agents") to act on her behalf regarding the Policy.[4] She

---

[1] Plaintiff initially brought suit against Duncan, but he was dismissed while this matter was still in Louisiana state court. Doc. 3-1 at 118. Ameriprise is licensed as a Producer Agency by the Louisiana Department of Insurance.

[2] *Id.* at 61.

[3] *Id.* at 6.

[4] *Id.* at 2 ¶8.

alleges that her Agents were not sent the final payment notification informing Plaintiff that her Policy would permanently lapse if the annual premium was not received by June 20, 2020. In addition, Plaintiff claims that she believed Duncan had arranged for her Ameriprise account to have premium payments made automatically. Moreover, on May 5, 2023, after the purported lapse, in response to a request from Plaintiff's agent, Richard Mire, RiverSource sent written confirmation indicating that the Policy was actually "current as of May 5, 2023."[5] On June 11, 2025, however, RiverSource informed Plaintiff that the May 5, 2023, communication was sent in error, and her Policy had actually lapsed in June of 2020.

On February 26, 2026, Plaintiff filed suit in the 24th Judicial District Court for the Parish of Jefferson, bringing claims for declaratory and injunctive relief, breach of contract, and various negligence claims. On June 26, 2026, Defendants removed this matter to this Court based on this Court's diversity jurisdiction. Defendants RiverSource and Ameriprise move for dismissal of (1) Plaintiff's tort claims; (2) Plaintiff's breach of contract claims against Ameriprise; and (3) Plaintiff's claims for breach of contract and declaratory relief, arguing the Policy properly lapsed from Plaintiff's non-payment in 2020. Plaintiff opposes.

## **LEGAL STANDARD**

[5] *Id.* at 3 ¶14.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[6] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[8] The court need not, however, accept as true legal conclusions couched as factual allegations.[9] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[10] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[11] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[12]

## <u>LAW AND ANALYSIS</u>

Plaintiff brings claims for (1) declaratory and injunctive relief; (2) breach of contract; (3) detrimental reliance and negligent misrepresentation; (4) negligence and breach of professional duties; and (5) statutory fault/negligence per se. Defendants move for dismissal of Plaintiff's tort claims, arguing they are prescribed or perempted. In addition, Defendants move for dismissal of the

---

[6] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[7] *Id.*

[8] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[9] *Iqbal*, 556 U.S. at 678.

[10] *Id.*

[11] *Lormand*, 565 F.3d at 255–57.

[12] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

breach of contract claim against Ameriprise, arguing that Plaintiff has not alleged it was a party to the Policy. And finally, Defendants move for dismissal of the breach of contract and declaratory relief claims against RiverSource, arguing that the Policy validly lapsed according to its terms in 2020, extinguishing all obligations under the contract.

As a preliminary matter, however, Plaintiff objects to the Court's consideration of quarterly account statements attached to Defendants' Motion. The Court will begin by addressing this objection before considering the breach of contract and tort claims against Defendants.

## I. Quarterly Account Statements

Plaintiff argues that the quarterly account statements attached to Defendants' Motion are matters outside of the pleadings that cannot be considered on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The account statements show a cessation of withdrawals from Plaintiff's Ameriprise account for premiums on the Policy and the lack of a policy summary page after the alleged lapse.[13] Plaintiff argues that her "Petition does not mention [the account statements], and [her] claims do not arise from or depend upon them."[14] Plaintiff contends that "Defendants instead introduce the statements as evidence supporting their affirmative defense that Plaintiff should have discovered the purported lapse earlier."[15] This Court agrees.

[13] Prior statements contained a policy summary page for the long-term care policy at issue.

[14] Doc. 9 at 3.

[15] *Id.*

"[A] court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; *and* (3) central to the plaintiff's claims."[16] Not only are the quarterly statements not specifically referenced in Plaintiff's Complaint, but they are also not central to her claims.[17] "A document is central to a claim if its attachment '… assists the plaintiff in establishing the basis of the suit.' "[18] Here, the quarterly statements do not help establish the basis of Plaintiff's suit but instead refute it. Accordingly, the Court will not consider them.[19]

---

[16] Post Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co., 671 F. Supp. 3d 722, 726 (5th Cir. 2023) (quoting Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par., 456 F. App'x 336, 340 (5th Cir. 2011)) (emphasis added).

[17] The Defendants' contention that they reference the quarterly statements in their Motion misses the point. The disputed materials must have been referenced in *Plaintiff's Complaint*, which they were not. Not only that, but just because a document is relevant to Plaintiff's claim does not make it central to her claim—no rights or obligations arise from these quarterly statements like they do, for example, from the underlying policy.

[18] *Port Cargo Servs.*, 671 F. Supp. 3d at 726 (quoting Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 499 (5th Cir. 2000)); *see also* Sheppard v. Tex. Dep't of Transp., 158 F.R.D. 592, 597 (E.D. Tex. Nov. 15, 1994) (finding that the court could consider a document attached to the defendant's motion because it was "specifically referred to in Plaintiff's complaint" and was "central and necessary to Plaintiff's cause of action"); Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d. Cir. 2006) (an exhibit is integral to a plaintiff's complaint when the plaintiff "relies on the terms and effect of the document in drafting the complaint") (cleaned up and citation omitted); *Port Cargo Servs.*, 671 F. Supp. 3d at 726–27 (allowing the court to consider an insurance policy attached to the defendant's motion because the subject policy was "reference[d] … throughout [the plaintiff's] complaint" and their claim centered "on the contents of the policy").

[19] Isquith ex rel. Isquith v. Middle S. Utils., Inc., 847 F.2d 186, 196 (5th Cir. 1988) ("a district court has complete discretion under the Federal Rules of Civil Procedure to either accept the exhibits submitted or not, as it sees fit"); *see also* Allen v. Hays, 812 F. App'x 185, 189 (5th Cir. 2020) (same) (citing *Isquith*, 847 F.2d at 193 n.3). The Court also declines to convert this Motion to a motion for summary judgment under Rule 12(d) at this early stage of the proceedings. No discovery has been conducted regarding the quarterly statements or other communications dealing with premium payments.

## II. Contract Claims

Plaintiff brings claims for breach of contract against Ameriprise and RiverSource. Plaintiff also seeks declaratory and injunctive relief against RiverSource, asking this Court to declare that the Policy never lapsed and remains in force or, in the alternative, declare that the Defendants must reinstate the Policy retroactive to the lapse date. The Court will address the claims against Ameriprise first.

### A. Ameriprise

Plaintiff alleges that Ameriprise is liable for breach of contract for its own "representations, omissions, undertakings, and servicing conduct" made in connection with the Policy, even though it was not a party to it.[20] In response, Defendant's argue that the absence of privity between Ameriprise and Plaintiff precludes a breach of contract claim against Ameriprise.[21] This Court agrees.

Plaintiff does not allege that Ameriprise was a party to the insurance contract between her and RiverSource. Indeed, Plaintiff concedes that Ameriprise lacks contractual privity with her on the Policy.[22] "It is well established that Louisiana provides no action for breach of contract in the absence of privity between the parties."[23] Because Plaintiff has not identified

---

[20] Doc. 9 at 14.

[21] Doc. 10 at 7.

[22] Doc. 3-1 at 15 ("Ameriprise's lack of contractual privity with Plaintiff does not independently dispose of those claims.").

[23] Matthews v. Stolier, No. 13-6638, 2015 WL 1726211, at *7 (E.D. La. Apr. 15, 2015) (citing cases); *see also* Travers v. Chubb Eur. Grp. SE, 714 F. Supp. 812, 817 (E.D. La. Jan. 31, 2024) ("Generally, in the absence of privity of contract between the parties, no cause of action for breach of contract will lie." (quoting La. Env't Concepts, LLC v. BKW, Inc., No. 18-12568, 2019 WL 2009242, at *4 (E.D. La. May 7, 2019)).

a legal theory that permits her to assert a breach of contract claim in the absence of privity, she has not alleged a plausible claim for relief against Ameriprise. Thus, her claim is dismissed.

**B. RiverSource**

Plaintiff alleges that RiverSource breached their contract by "declaring the policy lapsed, refusing to reinstate the policy, and failing to honor the policy as in force," which deprived her of the Policy's benefits.[24] Plaintiff seeks to have the Policy reinstated or declared to have never lapsed, subject to tendering past due premiums.

Plaintiff's theory for breach of contract is not that she paid the annual premium on time or that the Policy did not lapse pursuant to its own terms.[25] Instead, Plaintiff argues that RiverSource breached its obligations by exercising a lapse right it did not have, depriving Plaintiff of her benefits under the Policy. Plaintiff argues that RiverSource "could exercise its contractual lapse right only in conformity with the regulatory framework applicable to the Policy."[26] Plaintiff points to § 1911 of the Louisiana Administrative Code Title 37, Part XIII, titled, "Unintentional Lapse," as the regulatory framework RiverSource violated. In relevant part § 1911 reads:

---

[24] Doc. 3-1 at 6 ¶31.

[25] The Policy's plain terms state that the only thing Plaintiff had to do "to keep [the] Policy in force … is to pay premiums on time." Doc. 3-1 at 30. And Plaintiff's Petition states "[u]nbeknownst to Plaintiff and Agents the Policy lapsed in 2020 for nonpayment." *Id.* at 3 ¶13.

[26] Doc. 9 at 16.

> A. Each insurer offering long-term care insurance shall, as a protection against unintentional lapse, comply with the following.
>
> 1. Notice before Lapse or Termination
>
> a. No individual long-term care policy or certificate shall be issued until the insurer has received from the applicant either a written designation of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy or certificate for nonpayment of premium or a written waiver, dated and signed by the applicant, electing not to designate additional persons to receive notice. The applicant has the right to designate at least one person who is to receive the notice of termination, in addition to the insured…
>
> d. Lapse or Termination for Nonpayment of Premium. No individual long-term care policy or certificate shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days before the effective date of the lapse or termination, has given notice to the insured and to those persons designated pursuant to § 1911.A.1.a, at the address provided by the insured for purposes of receiving notice of lapse or termination…

Plaintiff alleges that RiverSource violated the regulation's designation and notice requirements, pointing out that her policy file does not contain a third-party designation to receive lapse notices, nor does it contain a waiver of that right. Further, RiverSource failed to send her Agents the final payment notification or any other notification regarding the Policy's pending lapse.

RiverSource contends that "Plaintiff misinterprets the long-term care regulations by alleging strict compliance is a mandatory predicate for an effective lapse due to non-payment of premiums."[27] RiverSource says that it gave Plaintiff notice at the address provided thirty days before the effective lapse and, "[b]ecause Plaintiff did not designate a third party to receive notice

[27] Doc. 8-2 at 14.

at the time the Policy was issued or any time thereafter," it was not "obligated to provide notice of impending lapse to any person other than Plaintiff."[28] Defendant argues that Plaintiff "has failed to state a claim for relief because she has not alleged that there was a continuing and valid obligation to perform by RiverSource."[29] RiverSource contends that "there was no obligation to perform … because there was no payment of the annual premiums required to maintain the Policy."[30]

Plaintiff's breach of contract and declaratory relief claims turn on whether failure to comply with the notice and designation requirements under Louisiana Administrative Code Title 37, Part XIII, § 1911 precludes an insurer from terminating a long-term care policy. If not, then the Policy validly lapsed pursuant to its own terms in 2020 due to Plaintiff's failure to pay premiums.

In interpreting Louisiana law, courts "should first look to final decisions of the Louisiana Supreme Court."[31] To the extent the supreme court has not resolved an issue, the Court must "make an *Erie* guess and determine . . . what the Louisiana Supreme Court would decide."[32] Here, the Court is unable to find and the parties have not cited any Louisiana state court decisions interpreting whether failure to comply § 1911's notice and designation requirements preclude an insurer's ability to terminate or lapse a policy. Accordingly, the Court will make an *Erie* guess on this issue of first impression.

---

[28] *Id.*
[29] *Id.* at 11.
[30] *Id.* at 11.
[31] Guerrera v. United Fin. Cas. Co., 161 F.4th 913, 916 (5th Cir. 2025).
[32] *Id.*

Under Louisiana's rules for statutory interpretation, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[33] The Court finds that, as a predicate to valid lapse, § 1911 unambiguously requires notice of pending lapse be given to the insured *and* a third person before an insurer can validly lapse a policy for nonpayment of premiums, unless the insured has affirmatively waived their right to designate a third party in writing. The regulation prescribes a mandatory two-part notice process that an insurer "*shall* … comply with" in order to prevent "unintentional lapse" of long-term care insurance policies for nonpayment of premiums.[34] Unless waived in writing, § 1911.A.1.a gives insureds "the right to designate at least one person … to receive the notice of termination [for nonpayment of premium], in addition to the insured." Further, § 1911.A.1.d states that "[n]o individual long-term care policy … *shall* lapse or be terminated for nonpayment of premium *unless* the insurer … has given notice to the insured *and* to those persons designated pursuant to § 1911.A.1.a." The phrase "unless the insurer … has given notice to the insured and those persons designated pursuant to § 1911.A.1.a" establishes that a policy cannot lapse under § 1911.A.1.d where the insurer failed to comply with § 1911.A.1.a. Interpreting the designation requirement permissively would not only go against the plain words of the regulation, but it would render both § 1911.A.1.a and § 1911.A.1.d ineffective.

---

[33] LA. CIV. CODE art. 9.

[34] La. Admin. Code tit. 37, § 1911. "The word 'shall' is mandatory." LA REV. STAT. § 1:3.

Such an interpretation would allow an implicit waiver of the insureds designation right where the law requires a written one, while simultaneously deeming notice to be sufficient when sent only to the insured where the law requires notice be sent to the insured *and* their third-party designee. Simply put, valid lapse of a long-term care policy for non-payment of premiums requires notice be accomplished in one of two ways: (1) notice is sent to the insured and their third-party designee; or (2) notice is sent to the insured alone if, and only if, they have waived their designation right in writing.[35] Because RiverSource failed to comply with § 1911, "it did not have the power to declare [Plaintiff's] [P]olicy lapsed."[36] Accordingly, the Court finds that Plaintiff has plausibly alleged a claim for breach of contract and declaratory relief.

The Court recognizes that its interpretation of § 1911 is strict, but notes that it is supported by other courts' construal of Louisiana Revised Statutes § 22:905, a similar law dealing with notice of lapse in the context of life insurance policies.[37] Courts have recognized that § 22:905, similar to § 1911, is a forfeiture statute that must be strictly construed.[38] When an insurer is not in

---

[36] Turner v. OM Fin. Life Ins. Co., 822 F. Supp. 2d 633, 638 (W.D. La. 2011) (finding that failure to strictly comply with LA. REV. STAT. 22:905, a notice statute dealing with life insurance, made a purported lapse ineffective).

[37] LA. REV. STAT. § 22:905 was formerly cited as LA. REV. STAT. § 22:177 prior to 2008. *See* 2008 La. Acts 415 at 22 (S.B. 335).

[38] *See e.g.*, Lester v. Aetna Life Ins. Co., 295 F. Supp. 1208, 1214 (W.D. La. 1968), *aff'd*, 433 F.2d 884 (5th Cir. 1970) (reasoning that LA. REV. STAT. § 22:905 is a forfeiture statute that must be strictly construed) (citations omitted); Lemoine v. Sec. Indus. Ins. Co., 569 So. 2d 1092, 1096 (La. App. 3 Cir. 1990) (same); *Turner*, 822 F. Supp. 2d. at 637 ("Because La. R.S. 22:905 is a forfeiture statute, it must be strictly construed in favor of the insured.") (citing First Am. Bank & Trust, Tex. Life Ins. Co., 10 F.3d 332, 335 (5th Cir. 1994); Johnston & Johnston v. Conseco Life Ins. Co., 732 F. 3d 555, 562 (5th Cir. 2013) ("Section

strict compliance with the notice requirements laid out in the statute, it is without "power to declare the policy lapsed."[39] For example, in *Turner v. OM Financial Life Insurance Company*, the court found that the insurer could not declare the plaintiff's policy lapsed because the notice informing him the amount of premium due "was mailed sixty days before the due date of the requested payment, outside of the fifteen to forty-five day time limit set forth in the notice statute."[40] In *Bean v. American General Life Insurance*, the court found that the Plaintiff plausibly alleged his life insurance contract had not lapsed because the insurer sent the notice of lapse after the premiums were due, which was outside of the fifteen to forty-five day window required by the statute.[41] And in *Lester v. Aetna Life Insurance Company*, the court found that the insurer could not declare the policy lapsed because the notice did not contain the amount due on the loan as required by the statute.[42]

The Court is aware of the key difference between § 22:905 and § 1911, which this Court believes strengthens its interpretation of § 1911. Specifically, as explained in *First American Bank & Trust of Louisiana v. Texas Life Insurance Company*, under § 22:905, a life insurance policy may lapse without notice for nonpayment if the insured has been in default for more than a year.[43]

---

22:905 is a forfeiture statute, since it concerns the forfeiture of insurance benefits, and under Louisiana law, forfeiture statutes are strictly construed.") (citations omitted).

[39] *Lester*, 295 F. Supp. at 1216 (W.D. La. 1968); *Turner*, 822 F. Supp. 2d at 638 (failure to comply with LA. REV. STAT. § 22:905 meant insurer "did not have the power to declare [the plaintiff's policy lapsed"); *see also Lemoine*, 569 So. 2d at 1096 (finding that failure to comply with notice requirements prohibited the insurer from declaring a forfeiture or lapse in a policy).

[40] 822 F. Supp. 2d at 638.

[41] No. 17-57, 2017 WL 4998656, at *3–4 (E.D. La. Nov. 2, 2017).

[42] 295 F. Supp. 1208.

[43] 10 F.3d 332.

This is based on the provision in § 22:905 that states that "'[n]o life insurer shall within one year after default in payment of any premium ... declare forfeited or lapsed any policy ...' unless the insurer complies with the statute's notice requirements."[44] Notably, however, § 1911 contains no such time limitation. Instead, it simply establishes that "[n]o individual long-term care policy or certificate shall lapse or be terminated for nonpayment of premium unless the insurer … has given notice to the insured and to those persons designated pursuant to § 1911.A.1.a."[45] Because § 1911 has no time constraint, unlike § 22:905, the Court will not add one.

## I. Tort Claims

Counts III, IV, and V of Plaintiff's Petition bring tort claims. In count III, Plaintiff claims that Defendants are liable for detrimental reliance and negligent misrepresentation based on the erroneous May 5, 2023, communication from RiverSource. In count IV, Plaintiff alleges that Defendants were negligent and breached their professional duties based on Ameriprise and Duncan's servicing of her Policy. In count V, Plaintiff alleges that Defendants' failure to comply with administrative regulations constitutes statutory fault and negligence per se. Defendant argues that Plaintiff's tort claims are prescribed. The Court will address each count in turn.

### A. Count III: Detrimental Reliance and Negligent Misrepresentation

Plaintiff brings claims for detrimental reliance and negligent misrepresentation that are independent of those arising out of the Policy's

---

[44] *Id.* at 335 (quoting LA. REV. STAT. § 22:905).
[45] La. Admin. Code tit. 37, § 1911.A.1.d.

lapse. She bases these claims on RiverSource's May 5, 2023, communication that indicated her Policy was still current.[46] Specifically, Plaintiff alleges that she reasonably relied on this letter to her detriment by "believing that coverage remained in force, refraining from pursuing replacement coverage … and delaying further action to protect her long-term care insurance."[47] In addition, she avers that Defendants "negligently supplied false information" and failed to exercise reasonable care in communicating accurate information regarding her coverage. She claims these actions prevented her from obtaining substitute coverage and increased her financial exposure for future long-term care needs.

Defendants argue that any tort claim based on the May 5, 2023, communication "prescribed a year later pursuant to La. R.S. 9:5606(A) or then-controlling Civil Code article 3492."[48] Defendants contend that this misrepresentation, if anything, put Plaintiff on constructive notice that her Policy had lapsed, reasoning that statements made by an insurer or their agent

[46] Plaintiff's Opposition makes clear that this claim is brought solely against RiverSource. Specifically, Plaintiff avers that the communications "were made by RiverSource in its own capacity as insurer and constituted alleged conduct independent of any earlier omission by Ameriprise or Duncan." Doc. 9 at 9. Plaintiff also clarifies that the letters sent by RiverSource were "issued … in its capacity as the insurer and constitutes RiverSource's own alleged conduct." *Id.* at 13. Thus, the Court construes count III as alleged solely against RiverSource.

[47] Doc. 3-1 at 7 ¶39.

[48] Doc. 8-2 at 10. Defendants do not address Plaintiff's detrimental reliance theory so neither will this Court.

that directly contradict Policy provisions are "sufficient to excite attention and put the insured on guard."[49]

In response, Plaintiff correctly points out that § 9:5606, a statute dealing with peremptive periods for claims against an insurer's agents, does not apply to claims, such as this one, brought directly against the insurer.[50] Plaintiff further argues that it is not reasonable to expect her to have known "upon receiving the letter that RiverSource's representation was false."[51] Plaintiff contends that RiverSource's communication "confirmed, rather than contradicted, Plaintiff's understanding that the Policy remained effective."[52] Plaintiff says that it cannot be inferred on a motion to dismiss that "a letter describing Policy information as 'current' placed Plaintiff on notice that the Policy had already lapsed."[53] This Court agrees.

Here, the question is whether Plaintiff's negligent misrepresentation claim is prescribed. Because her claim arose before the July 1, 2024, repeal of Louisiana Civil Code article 3492, it is subject to the one-year prescriptive period for delictual actions. Generally, the period begins to run from the day the injury or damage is sustained.[54] However, "[i]f the face of the petition shows that the prescriptive period has already elapsed, the plaintiff has the

---

[49] Doc. 10 at 5 (citing Campbell v. Stone Ins., Inc., 509 F. 3d 665, 672 (5th Cir. 2007) quoting Chagnard v. Cambre, No. 07-1754, 2007 WL 2229296, at *3 (E.D. La. Aug. 1., 2007)).

[50] *See* Sibley v. Blue Cross Blue Shield of La., 142 So. 3d 1022, 1025 (La. App. 1 Cir. 2014) ("if it was the Louisiana Legislature's intent for the peremptive periods established by La. R.S. 9:5606 to apply to insurance companies, the legislature could have easily included them in the statute."); Merhige v. Pac. Life Ins. Co., 420 So. 3d 185, 194 (La. App. 5 Cir. 2025).

[51] Doc. 9 at 13.

[52] *Id.*

[53] *Id.*

[54] Carter v. Matrixx Initiatives, Inc., 391 Fed. App'x 343, 344 (5th Cir. 2010).

burden of establishing that suspension, interruption or renunciation of prescription has occurred."[55] Because Plaintiff's petition alleges her injury took place in 2023, over three years before she filed suit in 2026, it is prescribed on its face. Thus, she must show that prescription has not run.

The doctrine of contra non valentem "provides some grace for those plaintiffs who are unaware that their injury was caused by a tort."[56] The doctrine states that prescription begins to run when a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[57] "Constructive knowledge or notice sufficient to commence the running of prescription requires more than a mere apprehension something might be wrong."[58] However, "when a plaintiff suspects something is wrong, he must seek out those whom he believes may be responsible for the specific injury."[59] "When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction."[60]

The Court finds that the May 2023 communication did not place Plaintiff on actual or constructive notice that her Policy had lapsed. Defendants' argument that the communication contradicted the terms of her Policy is

---

[55] Hoerner v. Wesley-Jensen, 684 So. 2d 508 (La. App. 4 Cir. 1996).

[56] *In re:* Xarelto (Rivaroxaban) Prods. Liab. Litig., No. 15-4790, 2017 WL 4517287, *2 (E.D. La. Oct. 10, 2017).

[57] Campo v. Correa, 828 So. 2d 502, 510 (La. 2002) (citation omitted).

[58] Allied World Nat'l Assurance Co., v Nisus Corp., 134 F. 4th 821, 827 (5th Cir. 2025) (quoting Chevron USA, Inc. v. Aker Mar., Inc., 604 F.3d 888, 894 (5th Cir. 2010)).

[59] *Id.* (internal quotations and citations omitted).

[60] *Id.* (quoting Jordan v. Emp. Transfer Corp., 509 So. 2d 420, 423 (La. 1987); see also Carter v. Haygood, 892 So. 2d 1261, 1268 (La. 2005) (explaining that the doctrine of contra non valentem allows "courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled") (quotations and citation omitted).

incorrect. To be sure, the Policy makes clear that timely premiums are required to keep the Policy in force, but nothing in the communication contradicts that provision in the Policy. Instead, the communication contains a simple summary of benefits which reflects that the Policy is still in effect as of May 5, 2023.[61] Nothing in this communication indicated to Plaintiff that her Policy had actually lapsed in 2020 such that she should have known she was "the victim of a tort."[62] Because Plaintiff brought suit within a year of the June 11, 2025 correspondence informing Plaintiff that her Policy had lapsed, the Court finds her negligent misrepresentation claim has not prescribed.

**B. Count IV: Negligence and Breach of Professional Duties**

Plaintiff alleges Ameriprise was professionally negligent based on Duncan's failure to establish automatic premium payments for the Policy in 2019.[63] Specifically, Plaintiff avers that she "reasonably understood that the long-term care policy premium payments would be maintained and handled through Defendants' servicing relationship, including by utilizing available automatic and/or recurring payment options through Ameriprise accounts and/or arrangements set up by Duncan."[64] Defendants argue that, where, as here, a claim arises out of the acts or omissions of an insurance agent, Louisiana Revised Statutes § 9:5606 subjects it to a three-year peremptive

---

[61] Doc. 3-1 at 109.

[62] *Campo*, 828 So. at 510 (citation omitted).

[63] Plaintiff's suit against Duncan was voluntarily dismissed while this matter was still in Louisiana state court. Doc. 3-1 at 118.

[64] *Id.* at 2–3.

period.[65] And, because Plaintiff's claims are based on acts or omissions taking place in 2019, they are perempted.[66] This Court agrees.

§ 9:5606 states that:

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.[67]

Under § 9:5606 "if a claim of negligence is not filed within three years of the alleged act, it is extinguished by peremption, regardless of whether or not it was filed within the one-year limitation period."[68] "Louisiana law sets an

---

[65] Plaintiff does not dispute that § 9:5606 applies to Ameriprise. Rather, Plaintiff disputes whether it applies to acts or omissions directly attributable to RiverSource. Indeed, § 9:5606 applies to "any insurance agent, broker, solicitor, or other similar licensee under this state" and Ameriprise is a licensed "Producer" which is defined by the Louisiana Insurance Code as an "'insurance agent', 'agent', 'insurance broker', 'broker,' …" elsewhere in the Code. LA. REV. STAT. § 2:46(21).

[66] Because the Court finds that Plaintiff's claims are perempted, it does not address Defendants' contention that they are also prescribed under the one-year period in the statute.

[67] *See also* LA. CIV. CODE art. 3458 ("Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period."); LA. CIV. CODE art. 3461 ("Except as otherwise provided by law, peremption may not be renounced, interrupted, or suspended.).

[68] Boes Iron Works L.L.C. v. Galatas, 974 So. 2d 713, 718 (La. App. 5 Cir. 2007) (citation omitted); Sitaram, Inc. v. Bryan Ins. Agency, Inc., 104 So. 3d 524, 530 (La. App. 2 Cir. 2012) (same); Bijeaux v. Broyles, 88 So. 3d 523, 527 (La. App. 3 Cir. 2012) (holding that "[b]ecause the [plaintiff's] suit was filed more than three years after the alleged act, omission, or neglect, it [was] barred by peremption" under § 9:5606).

absolute outside time limit for such claims of three years from the date of the alleged wrongdoing, regardless of when the wrongdoing was discovered."[69] Indeed, "[p]ublic policy requires that rights to which peremptive periods attach are extinguished after passage of a specific period of time, and accordingly, nothing may interfere with the running of a peremptive period."[70] Because Plaintiff did not bring her negligence claim against Ameriprise within three years of the alleged act, it is perempted and must be dismissed.[71]

**C. Count V: Statutory Fault/Negligence Per Se**

Plaintiff labels her claim for noncompliance with Louisiana administrative regulations as negligence per se. This claim is based on RiverSource's failure to comply with § 1911's designation and notice requirements before issuing and purporting to lapse the Policy. Plaintiff bases this theory on the fact that RiverSource failed to obtain and maintain a third-party designation or a written waiver of that right in her policy file. Plaintiff avers that this failure resulted in the wrongful lapse/termination of her Policy and caused her financial losses. However, "[t]he doctrine of negligence per se

---

[69] Whitfield v. Alpha Ins. LLC, 2809 Fed. App'x 363, 365 (5th Cir. 2008) (citing LA. REV. STAT. § 9:5606); *see also* Vicknair v. Blumberg and Assocs., Inc., No. 2017 WL 11675684, at *2 (M.D. La. Oct. 13, 2017) ("Case law confirms that the three-year period is strictly construed to apply from the date of the wrongdoing and cannot be applied to the date that the wrongdoing was discovered or reasonably should have been discovered.").

[70] Borel v. Young, 989 So. 2d 42, 49 (La. 2007) (citation omitted).

[71] To the extent Plaintiff alleges this claim against RiverSource, it is derivative of Ameriprise's and Duncan's acts or omissions. Thus, it would also be barred by § 9:5606. *See Merhige*, 420 So. 3d at 194 ("La. R.S. 9:5606's peremptive periods apply to the claims against an insurer under specific facts (*i.e.*, when the claims against the insurer are derivative of those against the agent)".).

has been rejected in Louisiana."[72] Thus, to the extent Plaintiff alleges a negligence per se claim, it is dismissed. In the same count, though, Plaintiff also alleges that RiverSource's violation is "evidence of negligence and breach of legal duties imposed for the protection of long-term care insureds such as Plaintiff."[73] Because no technical form of pleading is required, and because statutes and regulations can serve as "guidelines for the court in determining standards of negligence by which civil liability is determined," the Court construes count V as a typical negligence claim under Louisiana Civil Code articles 2315 and 2316.[74]

Defendants do not directly address Plaintiff's claim that RiverSource's regulatory noncompliance is its own basis for a negligence claim but instead argue generally that all tort claims arising out the purported lapse prescribed one year from the lapse under Louisiana Civil Code article 3492. Defendants contend that Plaintiff is deemed to know the contents of her Policy because "Louisiana law imposes a duty on the insured to read and know his or her insurance policy provisions."[75] Defendants argue, while citing several cases

---

[72] Galloway v. State Through Dept. of Transp. And Development, 654 So. 2d 1345, 1347 (La. 1995) (citing Boyer v. Johnson, 360 So. 2d 1164 (La. 1978); Faucheaux v. Terrebonne Consol. Gov't, 615 So. 2d 289 (La. 1993)).

[73] Doc. 3-1 at 10 ¶55.

[74] Sherman v. Harrah's New Orleans Casino, No. 06-2379, 2008 WL 11509255, at *5 (E.D. La. Feb. 12, 2008) (discussing "the role of statutes in defining the standard of care," and explaining that "when a plaintiff relies upon a statute for imposing a duty, 'the court attempts to interpret legislative intent as to the risk contemplated by the legal duty, which is often a resort to the court's own judgment of the scope of protection intended by the Legislature' ") (citing Kadlec Med. Ctr v. Lakeview Anesthesia Assocs., No. 04-997, 2006 WL 1328872, *2 (E.D. La. May 9, 2006)); *see also* Lusco & Lusco, LLC v. Sunu Assurances Liberia, Ltd., No. 2026-CA-0093, 2026 WL 2593331, at *5 (La. App. 4 Cir. Sept. 2, 2026) ("[s]tatutory violation claims still require a duty-risk analysis to establish liability").

[75] Doc. 10 at 5 (quoting *Campbell*, 509 So. 3d at 671).

dealing with bank accounts, that Plaintiff's failure to conduct a brief inquiry into her own accounts "forecloses any contention that prescription did not begin."[76] This Court disagrees.

As described above, prescription begins to run when a plaintiff has "actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."[77] At this stage of the proceedings, the Court finds that Plaintiff's inaction after the purported lapse of her Policy was reasonable. Taking Plaintiff's allegations as true and viewing all reasonable inferences in her favor, Plaintiff has alleged that Defendants did not maintain a third-party designation for an individual to receive lapse notices, nor a waiver of that right as required by Louisiana law. Thus, any notice sent to Plaintiff was definitionally deficient. To be sure, Plaintiff is deemed to know the provisions of her Policy, but the lack of a third-party designation or written waiver of that designation is not itself a provision of her Policy.[78] Moreover, Plaintiff believed her financial advisor and account manager setup automatic payments for premiums on the Policy. Prior to this, Plaintiff had not missed a premium payment for the prior twenty-five years. Moreover, Plaintiff created a POA for her Agents to handle matters associated with the account, raising a reasonable inference that she was not capable of managing the Policy herself. After Plaintiff's Agents inquired into the status of her Policy in 2023, they were informed by RiverSource that the Policy was still in effect. It was not until

---

[76] *Id.* at 4. The Court has already found that it will not consider Plaintiff's account statements on this Motion.

[77] *Campo*, 828 So. 2d at 510 (citation omitted).

[78] Plaintiff's Petition indicates the designation, or lack thereof, was part of her policy file, not her actual Policy.

Plaintiff and her Agents attempted to initiate a claim in March of 2025 that they were informed the Policy lapsed in 2020 due to non-payment of the annual premium.[79] Because Plaintiff filed suit within a year of this notice, the Court finds her claim is not prescribed.[80]

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

**IT IS ORDERED** that Plaintiff's breach of contract claim against Ameriprise is **DISMISSED WITHOUT PREJUDICE.** Plaintiff shall have **TWENTY (20) DAYS** to amend the Petition to cure the deficiencies identified herein.

**IT IS FURTHER ORDERED** that Plaintiff's claim for negligence and breach of professional duties against Ameriprise is **DISMISSED WITH PREJUDICE.**

The Motion is **DENIED** as to Plaintiff's remaining claims.

New Orleans, Louisiana this 20th day of November, 2026.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

[79] Doc. 3-1 at 107.
[80] Plaintiff filed suit in February of 2026.